Mr. Russell I am the attorney for the appellant, Keith Redburn, the landowner in this case. Mr. Redburn brings three points of error. First, that the trial court erred in granting summary judgment that the city had an easement by estoppel. Second, assuming arguendo that there was an easement, that the accommodation doctrine so-called doesn't apply in the state of Texas and is not a recognized doctrine in Texas for easements. And third, that the takings claim under 1983 was dismissed. The major facts of the case, being that we're the respondent to the motion for summary judgment, are the four affidavits that we submitted. Two of the affidavits are by Keith Redburn. One of the affidavits is by Steve Cooper, and the other affidavit is by Daryl Smith, two independent individuals. They supply the facts that support our view of the summary judgment. The property in question, there's 122 acres of land in the city of Victoria downtown that has discharged all the storm water on my client's backyard. This comes from 72 storm drains within the city, and it's two miles of sewer pipe before it reaches my client's land to be discharged. And although in the history of the property there's discussion about the Phillips ditch, which was dug by the city, the Phillips ditch was only one-fourth the size of the largest existing arterial, which is 3,600 feet of that length of size. Does the record indicate when it became that the flow was so increased and greater and much more than what the Phillips ditch used to be? Your Honor, the record indicates that there's been a continuing increase of flow. Over time, it's just increased, and there's not, like, on a, this time it got really bad because some building was built downtown, and it's caused this, you know, some kind of issue. The affidavit of Daryl Smith says that since 2010, when he first went to see what it would take to put this all underground pipe, that there's been a substantial increase in the size of the canyon that's been cut in Mr. Redburn's backyard just since 2010 to the degree that the actual pattern at the bottom has changed. When the Phillips ditch was adopted, the city shows that along the Phillips ditch, when it was put in, there was hardly any streets or, I mean, there's streets, but hardly any buildings. But since that time, the city has filled up. It's become more dense. The affidavit of Keith Redburn shows that the city has become more dense. There's been less impervious cover. And, of course, what is also true is this. Our evidence shows it wasn't a natural waterway. Now, that's not to say there wasn't some flow that came across the land, but to get this whole entire land, you have to bring the water, would have to have brought the water uphill. And the evidence shows that these pipes are now going through hills or through elevation changes to reach our client's property with this increased flow. Is the culvert, and I should know this, but is it actually on your client's property, or is it part that was deeded away or segregated off? What happens is the pipe, the city's pipe, comes to my client's property, and it's a five-foot pipe. It discharges the water. And then when it exits my client's backyard, it goes back into another five-foot pipe of the city's and then continues on. So my client's property is the only private property in the entire city that has storm sewer water discharged across its backyard. Just across the back. So there's a pipe. The pipe stops. It gets all the sewer water, the storm, and then it somehow gets back in the pipe on the other side of the property. Yes, Your Honor. It goes back into a city pipe under the river, I mean under the road and continues on eventually. Is there evidence in the record that all the debris of which you speak of in the briefs increased over time, like the needles and terrible things? Yes, Your Honor. The affidavit of Stephen Cooper and Keith Redburn both talk about how used to we didn't have all the plastic bottles and plastic bags and debris that we have now that now all gets washed into the sewer system. Hyperdermic needles, for example, are found. And that doesn't go back through the other pipe. That just sits on the property then. Yes, Your Honor. As a matter of fact, the city employee even told my client that we were basically a filtering system for the city sewer to clean up the property before it goes down to the Guadalupe River. Is that in an affidavit in the record? Yes, Your Honor. It is. It's in Keith Redburn's. Keith Redburn has submitted two affidavits. It, I believe, is in the first one, which appears, I think, three times in the record, but at page 600 of the Record on Appeal is where it first appears with its attachments. And it shows that so all this is dumped, everything in the water pools on my client's property, Daryl Smith, who was a reluctant defiant because he does a lot of work for the city and for the county, he does these things, puts pipes in, said that he would not even let his crews go back in my client's backyard and down the deal because the last time Daryl Smith, Your Honor, because the last time he sent two guys down, he had to send them to the doctor for poison ivy poisoning, and he didn't want to, he thought it was too dangerous for his work crews to go back to my client's backyard to do that. And, of course, the nature of this gets worse and worse. Two affidavits, one Keith Redburn and Steve Cooper's, both show that, for example, the growth of the canyon is evidenced by the fact that there was one tree that was in the middle of the one part of the canyon, but it was a small tree where the bulb was grown. So you knew it had to actually have, it wouldn't grow there in the middle. It had to be grown on the bank, washed away, everything washed away. And so we have the erosion that's washing the dirt away. We have all this deposit of trash, so much so that the city of Victoria that's in the affidavit has twice attempted to cite my client for failure to keep the place clean of trash. But, of course, it's nearly impossible to go in there and get the trash cleaned up. And all my client is asking for is to connect the pipes and to have this underground, just like it is everywhere else for the other 1.88 miles in the city, is to connect the pipes and put it together. Can you give your best argument on why this isn't easement by estoppel? Yes, Your Honor. Because it had already, they knew it was there when they, go ahead. Well, the easement by estoppel doctrine, they're premising it solely upon a letter by Mr. Brayman in 1941. Mr. Brayman owned it before my client. And Mr. Brayman wrote the letter that basically what he was doing, he was putting in a fence. He wanted to extend his fence, which now surrounds his property, in order to take in the newly acquired land and it would be necessary to build my fence across said ditch. I have the letter right in front of me. I don't see how that creates an easement by estoppel. Yes, Your Honor, because all he's wanted to do is a fence. And he was talking to his neighbor. His neighbor, he was going to put up a fence on the boundary between the neighbor. And he needed to put tile, but at that time the city hadn't enclosed it, put tile underneath it to support the fence. So he was asking for it to support the fence. And obviously the city didn't rely upon that representation in any way to create some sort of easement because when my client went to the city attorney, David Smith, after buying the property, explaining the trash situation, Mr. Smith said, well, the city didn't have an easement and would need to get an easement in order to go in and clean it up. And that's in the record too. Yes, Your Honor. That's in the record as well. And, of course, under the other implies, although the trial court did not find an easement by necessity or by prior use, although those were plaid and inserted, but those fail likewise because that doctrine is based upon a necessity of a prior use of a grantor. When the grantor is granting something that the grantor has previously used to its grantee, the grantee, by implication, gets to continue the use. Usually it's a roadway. So, for example, if you convey the back portion of your property and you reserve an easement across by implication to get to your property by implication and prior use if there's been, but in every instance it relates to a grantor. And the big failure of the city in their argument is they're talking about a triangular piece of property that where it's located, and this is shown in Exhibit A of Redmond's first affidavit and also in Exhibit F, it's actually shown in Exhibit F of the city's motion for summary judgment, you can see the triangle, it doesn't even contain the drainage portion. All that was was simply to provide a quick claim to the city so that the city could put a street in or have title to the street because previously it wasn't part of the city's, it wasn't within the city limits. Once it became the city limits, the streets around it became the city street, thus quit claiming that triangular piece. The triangular piece did not include the drainage culvert or anything like that? No, Your Honor, it's next to it. It's close to it, but it doesn't include it, and that can be shown on Exhibit A. It's very close. But the whole point of that .11 acre was simply to give roadway, and without the roadway it wasn't there. And we view there's no easement at all, but under the accommodation doctrine, which is although recently applied in oil and gas and recently applied in groundwater, that same doctrine in Texas goes back to even a case filed in 1858 that the Texas Supreme Court held where it said an easement owner cannot unreasonably burden. Are you still urging your Fifth Amendment taking? Yes, Your Honor, we are. Did you exhaust your state remedies for that? Your Honor, we believe that there's been no pleading that it wasn't right for failure to exhaust before we were involved in the case as counsel. The case went up on some statutory basis to the Texas Court of Appeals, and we believe all things were exhausted, but that hasn't been pled or briefed by either party. So they didn't argue that it's not right? Your Honor is correct. Well, what did Judge Hughes rule on about the takings? I can't find that in his opinion. Your Honor, I think I don't know that. I don't think it was addressed, but it was a live claim? Yes, Your Honor, it was a live claim. Maybe the opposing counsel thinks it was addressed. Do you think it's addressed in the opinion? Your Honor, I don't think it's specifically addressed. He says he may not relitigate his nuisance claim, and that's been resolved finally, but maybe that's what he means. Your Honor, I think that he was thinking the city had an easement and that because they had an easement they could do whatever they wanted to, and based on comments Judge Hughes made in counsel chambers that's part of the record and the reporter's record, I think his theory was basically that he didn't think he could tell the city that they needed to put something underground. He explained that he owned some property out in the country that has a creek by it, and he gets a lot of debris in his creek. The distinction, though, that we say is that unlike I have the same situation with a creek at my property, but the distinction is we're sitting here as a filtering for the entire city as its whole stormwater system of two miles comes flowing on our property. Everything's sucked out, and the rate of flow is very high. It's not some naturally occurring thing. It's being directed that way by the city. That's the difference. Yes, Your Honor. Yes, Your Honor. It wasn't, and when I say it wasn't naturally occurring, I'm sure there was something slightly lower, but back in time all this property that's draining was getting drained somewhere else and going otherwise to the Guadalupe River. But even if there was an easement, there can still be a takings claim, can't there? Yes, Your Honor. And there certainly can be a takings claim, and also the accommodation doctrine supplies all sorts of benefits because this, even if there was an easement, it would clearly violate the duty of an easement holder to the dominant estate. Do you think there are fact issues, and this needs to be sent back for that to all be adjudicated, or do you think you win on summary judgment on some of this? Your Honor, we think it should be remanded for trial for a trial effect. That's our plea. Just answer one question for me. Yes, Your Honor. Because this has bothered me, and I don't think I saw an answer to it in the record. As I understand it, this property was a natural water flow back in whenever. In fact, what's the phrase in easement law, when man remembereth not, or whatever? It was a water flow. And yet the city came in and put in a culvert on each side of the man's property, which obviously would have increased the water flow across his backyard. What, if anything, did the owner at the time do in protest to that? Your Honor. Tell me what's in the record about that. The only thing in the record is that it was a permissive use up until a time shortly before the lawsuit is filed. But I will say there was never a pleading or briefing, and there's proof to the contrary of a prescriptive easement, one that till memory of man runneth not to the contrary, which in Texas is 10 years. And there's proof that it was permissive in the early days, and also it was disputed about the natural water flow. There was a dispute. In the affidavits it shows that while no question there's some sort of flow across the land, but it wasn't a natural waterway or creek. The Phillips ditch had to be dug one foot deep to get it there and to start it there before this all started. What was the year the Phillips ditch was dug? Your Honor, that was many years ago, and that was before 1900. Like 1870? Yes, Your Honor. I believe it's 1881, but I'm probably off by two years. Okay. Thank you. Mr. Shearheart. Mr. Shearheart, Your Honor. I'm sorry. May it please the Court. I'm Scott Shearheart representing the City of Victoria in this matter, and there are a few things that need to be cleared up, and they are in the record. This triangular piece of property that we talked about did belong to Mr. Redburn's predecessor in interest. At the time that it was transferred to the city, it had an open ditch on it. What happened was the street directly above was the city limits. When the city completed the drainage project in the 1930s, there was an open 60-inch pipe there. The water flowed down through Phillips ditch and across the property. When Mr. Brahman came in and put tiling in, it's kind of an ancient term, but he actually put the 60-inch pipe in that flows underneath where the fence lies today, and we found where the footings are, and all that's in the record. He put the 60-inch pipe on the side where it flows in. Mr. Brahman put the 60-inch pipe in? That's correct. And on the other end of the property. What the city needed the triangular section for was there was open ditch between the intake onto Mr. Brahman's property and where it came out of the city's property. When the city obtained that triangular portion of property, it put in a 60-inch pipe to connect the two systems and covered it up and put a road across it. So that was an open ditch that kids played in at that time in the 1930s. Now, wait a minute. Mr. Brahman, you said Mr. Brahman put in a 60-inch pipe. That is correct. Now you're saying the city put in a 60-inch pipe. The city's 60-inch pipe ended at that street that's directly above the property. That was the end of the city limits in the 1930s when the drainage project was completed. The water flowed openly and curved into and between two pieces of property. And that was known as Phillips Ditch. Mr. Brahman purchased the property on the other side of the ditch and then petitioned the city, let me put tiling in here to support a fence across it on both sides of my property. So on the bottom side, there's Bluff Road, and Bluff Road has a 60-inch pipe going out of it. But what Mr. Brahman put in was an intake and approximately a 30-degree turn into his property that was covered over so he could put a fence across it. But that's not what's causing the debris on his property. That's correct. That's not what's causing the debris. What's causing the debris on his property is the city's pipe that stops and then flows. Isn't that right? Am I right that the city pipe is the one that's causing the debris on his property, not some old pipe that was put in at the time of the fence on the other part? Whatever debris is flowing across his property is likely flowing through the city pipes down to the property. So it's the city pipe that's putting debris on his property. It's coming through the city pipes. Okay. But it's not the city's debris that's going into those pipes. It's people throwing things on the side of the road or what have you. It's garbage. It's not a city act that is causing that debris to go onto the property. And what's retaining it on the property is they've allowed brush to grow up inside. Well, the city is in charge of the roads or else the county is or someone. The debris, it's certainly not the landowners with the debris that's on the side of the road, right? I agree with you, Your Honor. The city is responsible for the roadway all through this drainage area. But the drainage area is a mature drainage area, and it has existed in this form since the 1940s. And the plats do not tell about this supposed easement that the city says it has? There never was an express easement across the property. And so whenever the – and it's true that the city agent said there is no easement. Did he say there was no easement to the opposing party? I don't know. That's in Mr. Bannon's affidavit. Do you dispute that? I'm sorry? Does the city dispute that its employee in charge of this told him that there was not an easement? We don't have evidence one way or the other to determine that. So he may have said that. It's undisputed in the record at this point. You're not refuting it? I'm not disputing it because I just don't know, Your Honor. Okay. But I can say that there was never an express easement across the property. This was a drainage ditch that's been there forever. It never really became a problem until they ended up with five tons of concrete poured into the outlet of the pipe that would have threatened everybody upstream. And that's where this thing came to a head. What is in the record concerning why the city refuses to come in and connect the two culverts and have an underground pipe? The city could come in and connect the two culverts and put an underground pipe in there, but it's prohibited by the Constitution of the State of Texas from spending public monies to benefit a private landowner. And that's what he wants us to do. So you're saying that none of the other pipe that carries the storm drain is on private property? I think it's all inside underneath. The pipe that comes down from downtown that flows into this is right down the middle of the street, down North Street, where the original drainage project was done. I don't know where all the pipes are, but I'm sure they're all within right-of-ways that the city has an interest in. But this is a mature drainage area that has been this way since the 1940s. There have been no pipes added. Why doesn't the city acquire a right-of-way and then put in some pipe? We could do that. We could do that by condemnation. That is one way to resolve this. Well, and another way is if there's a takings case. It could be resolved through that. It could be resolved through a takings case. But we don't believe that there's a takings case here, Your Honor. Well, what did Judge Hughes say about the takings? You could have the federal takings case even if you have to exhaust the state remedy. So the fact that that was resolved in the nuisance doesn't tell us about the federal takings case. No, but I do think that the – Well, does it? Did he rule on it or not? I think he did rule on it, Your Honor. I think that it may be an implicit ruling. Well, what is his ruling? He said that Redburn take nothing by the takings case. Said what? That he take nothing. Did he say take nothing on – it doesn't say on – it's just in general. You're saying it's wrapped up in the overall ruling on the case. That's correct. But he doesn't address any of the legal arguments about the takings point. I don't believe he does in his opinion. He just dismisses Redburn's claims. Well, he never mentions the taking claim in his opinion. He simply says, as you note, he says at the end, the city of Victoria has an implied drainage easement across the property. He will take nothing. But he never addresses the takings claim. I don't think he does explicitly in the order, Your Honor. That's correct. Well, what do you say about the takings claim? Did the landowner, did he exhaust the state remedies so that he could bring a federal takings claim? Well, when he brought – the first time we had a takings claim was after we came back down from the Supreme Court. Everything had been dismissed out of the lawsuit except for one issue. He brought a takings claim under 1983. The important thing to note here is that in order to have a takings claim, the city has to do something. They have to either take it by physically taking the property, which didn't happen here. The city hasn't been on his property since the 1940s. Or they have to regulatorily take the property. In this case, there's been no – Wait. What do you mean the city hasn't been on the property? I understand from counsel for plaintiff that the city has threatened him at least twice with fines for not keeping his property clean. I don't believe that's actually in the record anywhere. But the city wanted to come into the property to see about trimming out the trees and things in the ditch to allow the water to go ahead and flow through after Redburn made his complaint. The original lawsuit that was brought was against city employees trying to prevent them from trespassing on Mr. Redburn's property. We haven't been on his property. We haven't been in there to do any maintenance. We haven't been on any of that property. I can't see where we've been on the property since the 1940s, when they first put the fences in. So – How is that possible if he has people that – they've told him that his people have gotten poison ivy on his property? Those aren't government agents. Those are his people that they brought onto the property. From what I understand, this is some company. I thought he said it was the city people. Not the city people, Your Honor. Okay. What was that episode where the city was asked to come in and the city said, well, we would have to have two rights of way, one to deal with a ditch and the other one to bring the workers in. Did I read something like that? I think there's something like that in – that is a hearsay statement in Mr. Redburn's affidavit. But the city hasn't come in. They haven't put any equipment on there. They haven't done any work on the property. They haven't done anything to that. Okay. But you did not argue either in pleading or in the briefing that the takings claim is unexhausted? I did not argue that it was unexhausted. Okay. You only argued that it was too late, right? I argued that limitations is there, and I argued that the city had to take some action in order to have a taking. Okay. In this case, there's been no new piping added. There's been no new property that's added to the drainage zone. Congressman, do you agree that the city has connected pipes under other private properties like this in order to drain the city? No. Since the 1940s, I think this drainage here has been completed. If you look at the affidavit of Mr. Gill, he specifically says since 2000, there has been no capital project to add any more property to this. They haven't added any more real property to the drainage. They haven't added any more pipes to the drainage. My question is, has the city of Victoria put pipes underneath private property for drainage purposes, similar to what would be done here if you were to connect the two ends of the pipe? I know of no instance like that, Your Honor. They don't have any underground drainage. They have underground drainage, Your Honor, but I don't know of any instance where they place pipes under private property to facilitate that drainage. Well, now you're saying you don't know. Of course, we're constrained by the record. So what does the record say about it? The record says nothing about that. Okay. Does the record say anything about the fact that additional pipes have been linked in, like with new construction of housing, so that that's actually increasing substantially the flow across his property? Because as new people get hooked into the city pipe, that increases the flow from other people's houses. There's allegations that that had occurred, but if you look at the affidavits of Kenneth Gill, the city engineer, there have been no new pipes that have been added to this. There's been no new area added to this. So no city, no private person has connected their system to the city pipe? Absolutely not. This is a storm drain. This is not a sanitary sewer system. Okay. What this is, it drains the streets, basically. Okay. And so we know what's in that range. Can you make your best argument for why this is an implied easement rather than a permissive use? Why there's an easement? It's obviously an implied easement. Why is it an easement rather than a permissive use? I think that on February 4th, 1941, Mr. Bremen recognized that the city had an interest in this ditch because they were draining the streets. This system had already been in place. And he goes and asks the city for permission to put tiling across the city's ditch. I think that's an acknowledgment that it is the city's ditch. Now, that ditch has been there since before the city was there. It's been there since man remembereth not. But at that particular time, he says, I'm going to go ahead and put this tiling in and I'm going to redirect that water across my property when I do this, and I'll take responsibility for any damage to this property that occurs. I didn't read that in there. I thought he said that he would take responsibility for any damage that putting the fence in would occur. I think that what it says is to my property is what the exact words are in the note, Your Honor. Well, he might have said damage to my property. That's correct. And at that point, he had purchased property on both sides of the ditch. From the fence. And the fence didn't cause the Phillips ditch. Absolutely not, Your Honor. Or the canyon or whatever you call it. That's right. The canyon was caused by water draining out of the city of Victoria through this man's property and back into the city park on the other side. That's correct. To the Guadalupe River. That is correct, Your Honor. But the key here is that that water may be directed around because of all the trees and brush that you see in the photographs that are in the record showing how clogged this thing is. But there's no increase in flow that's attributable to the city. And it's got to be a city act to be a taking. Well, I didn't see where Mr. Barnum, the prior owner, who was dealing with the city about this ditch, I didn't see where he said he was going to direct the flow around anything. He just said, I want to put a fence around my property. And to do that, I have to go across your drainage ditch or whatever you call it, and I will put tile down to make sure that the fence post won't fall in or something like that. He didn't say, I'm directing the water differently, did he? He didn't say that. But the tiling that he put in was a 60-inch pipe. It wasn't just tile laid across the ground. He put a 60-inch pipe from the ditch where it was at the edge of his property into his property so that he could fill in with dirt to put the fence in. I'm not sure I saw that in the parts of the record that have been reproduced for me. I haven't read a whole record, of course. And I don't see how that matters. Why does that matter to the increased flow across his property from the city pipe? Well, one reason that it matters is kind of a common-sense reason, because if you put the nozzle down on the ground, wherever the nozzle is pointed, that's where the water is going to go. And he put the nozzle on the ground, so to speak. The second important reason here is that the city hasn't taken any action to increase the water flow. If there's been any impervious cover that's been added, and I don't dispute that there has, it's been through private development. It's not developed better streets, more concrete, less absorption? No, there has been no concrete added since 2000. There have been no new pipes put in since 2000. There's been no additional area put into this since 2000. You seem to be suggesting that if Mr. B, I'll call him Mr. B, the predecessor, had not done whatever he did, that the water wouldn't have gone through this property. It would have gone somewhere else. Is that right? No, I think it would have gone through that ditch no matter what. I think that ditch has been there. It preexisted the 1930 sewer project. But our project ended at the street because that was the end of the city limits at that particular point in time. And you had a culvert there. I had a culvert there. No, I've read the briefs. I've read parts of the record. Your argument today about Mr. Bramman put in a 60-inch pipe on each end, et cetera, I just don't recall reading that. Is that in the affidavits? Does the city say that in an affidavit or some sort of record evidence? No, because nobody's alive who could see it. Well, why are you talking about it? Because I've been on the ground and I've seen where they are. No, sir, I'm saying why are you talking about something that you're telling me is not even in the record? I think it is in the record, Your Honor, but it's not in the record. Well, where is it in the record? Your Honor, I don't have plans or anything like that. It was a project that was built on private property in the 1930s or early 1940s. Do you have an affidavit from one of your employees at the city who says what you're saying to us? You can't talk about things that are not in the record. So do you have some affidavit that says this point about Mr. Bramman doing this and how it affected the land? I do not, Your Honor. Okay. Do you even have this in your brief? No, Your Honor. Okay, so you're talking about something that's not in the record or in your brief. It's in evidence that we did present to the trial court, Your Honor. Okay. Would you like to use your remaining time to tell us why you think you have an easement and why, if you do have an easement, you don't have to accommodate? The accommodations doctrine is a doctrine of oil and gas in Texas. It's recently been expanded to include groundwater. It's when you have a separation of a mineral or water interest and the surface, and you would have to, if you're coming in to drill on a person's property to recover the water or the minerals, then you have to accommodate an existing use. This ditch has been there forever, and it preexists any use that this particular landowner has for this property. He bought the property with the ditch on it. It's not like we came in and dug the ditch on his property. It is causing unreasonable damage to the servient state, though, isn't it? But the Supreme Court has not expanded this doctrine to cover an easement that's simply a drainage easement. If it is an easement. If it is an easement, Your Honor, and we contend that it is. And we would ask this Court to affirm the trial court's order. Thank you, Your Honor. Thank you, sir. Russell? Yes, please. Can you straighten this out here? I'm sorry, sir? Can you straighten this out here? Yes, Your Honor. I'd be glad to. You rushed up there like a shark smelling blood in the water, Mr. Russell. Well, Your Honor, the first thing I want to bring out is this business about there not being any new pipes. Now, it is true that the major pipes were built when the bond program was done. I'm talking about the major pipes. And those were all there, and they didn't go beyond where they ended because there was a time when Mr. Redburn's property wasn't in the city limits like it is now. It was on the edge of the city limits. But in the record, and it's partially in the affidavit of Keith Redburn, but also when Judge Hughes had us all go and find out what additional development and improvements there had been, we have instances of dozens and dozens and dozens of new development, whole empty city blocks being filled up with parking where there was none all since the year 2000. But he says none of that's going into the city water, the storm drainage. Your Honor, two reasons why that's not correct, what he says. One is, is that— First of all, is his point in the record that it's not, none of it's going in? Does he have an affidavit that says none of it's going in? Your Honor, I don't believe so. Do you have an affidavit that says it is going in? Your Honor, partially in the affidavit of Keith Redburn, it talks about that. And, for example, he mentions Trinity Episcopal School where we expanded the parking lot. Those drains begin in the—those new drains begin in the parking lot. And the water drains from the parking lot into the drains and comes into the city sewer system. And as impervious cover has gone away, as, you know, I know Judge Hughes was thinking that where you had grass before, that it would still run off, but the rain will come on the grass and soak into the ground. And when you have concrete, and the records also show how, in Keith Redburn's second affidavit, how there's been additional by city ordinances requirements to use concrete instead of other forms of driveways or that, which has caused the flow to go in. You use the term sewage system, but we're talking about the storm drain system. So you're saying, for example, this parking lot at this school has drains, and those drains go into the storm drain system that's going into your client's property. Yes, Your Honor. And while it is true that anything that would have been done on private property would have been done originally years and years ago that was part of the main pipes, the main pipes, it's regularly true that new tie-ins are mating into the storm sewer. For example, from parking lots and from other properties. Wells Fargo was part of the. And you have an affidavit about this. The affidavit, if Keith Redburn speaks of it, and then also in the record, is the information that Judge Hughes requested us to present where we presented the additional developments and expansions there. But Keith Redburn's affidavit in the summary judgment does speak to this, Your Honor. What did Judge Hughes have to do with that? I'm sorry. You were saying Judge Hughes did something. Oh, I'm sorry. He had requested, as he was considering how to rule, he was asking the parties to bring additional evidence in terms of what new developments had occurred, and we presented it from that. And I will say, again, water cannot flow uphill, and we have it in the affidavit that a lot of this water would have had to have been flowing uphill. And, Your Honor, for clarity on this triangle, it's Exhibit A of the Redburn affidavit, but it's actually Exhibit F, and when you look at the surveyors, the compare page one and two that shows where that triangle was and where this ditch is, you see it's very close, but the ditch is to the west-northwest of the triangle, which is to the east and the south, and it clearly had to do with completing the street and not having to do with this matter. With regarding to the Accommodation Doctrine, one other item that's not in our brief, but the Supreme Court of Texas talks about it a lot in the Restatement Third of Property Servitude, Section 4.1, about unreasonable damage to the servient estate, and it talks about how the holder of an easement of the dominant estate cannot cause unreasonable damage to the servient estate. And throughout the history of Texas jurisprudence, the Texas courts have followed that with regard to easements. What did you cite, Section 4.2? Your Honor, that was Section 4.1, Restatement Third of Property Servitudes, Third Edition. It's a restatement. I think that's what I was quoting in my question. It's not a law. That's just a restatement. Yes, Your Honor. But the Texas Supreme Court has adopted that, used that restatement. Yes, Your Honor. Could you give us a citation to that? Your Honor, both in the case that we have of Coyote Lake, the Texas Supreme Court case, and in the Getty case, the case has cited the references to the restatement and to how proud they are of this doctrine in Texas. Are they as proud as the Homestead Law? Well, I'm not. What about the constitutional provision that your opponent says would prevent the city from putting up a pipe through this man's land? Your Honor, it's not improving our property. It's their situation, and it's eliminating the destruction that they've caused to our property to make it like it should have been. So it's not helping you all to increase your value. It's ceasing the destruction. Yes, Your Honor. Okay, that's the way you look at it. Yes, Your Honor. Well, this case brings up the old axiom that really doesn't apply all the time. Where there's a wrong, there's a remedy. Thank you, Your Honor.